The plaintiff, a corporation, sued the defendant, an individual, trading under the style of "Baltimore Mercantile Company," on six promissory notes. These notes are payable to Brenard Manufacturing Company, and plaintiff sues as holder in due course. In each note is the stipulation: "In case of default in payment I agree to pay payee's reasonable attorney fees."
The defendant admits the execution and delivery of these notes to the payee, but denies that plaintiff is a holder in due course. The defendant further says the notes were procured by fraud and deceit of the payee, and that the goods constituting the consideration of the notes were refused by him as soon as he discovered the fraud and deceit, and that plaintiff is, in truth, the agent of the payee and not the owner of the notes.
The defendant also admitted plaintiff's allegation that, "the defendant was engaged in business under the firm or trade name of the `Baltimore Mercantile Company,' and that the defendant while thus trading failed to record his said trade name in the office of the clerk of the Superior Court of Mecklenburg County, N.C. as he was required so to do by law."
The plaintiff moved the court to strike out the defendant's answer and for judgment by default final on the complaint, upon the defendant's admission that he failed to comply with C. S., 3288.
The court rendered the following judgment:
"This cause coming on to be heard before his Honor, W. F. Harding, judge presiding, and being heard upon motion of the plaintiff for judgment, for that the defendant having failed to comply with the law relative to recording his trade name; and to strike out answer and for judgment by default final. The court finds the following facts: (1) That the defendant, Chas. M. Hendry, is and was at the times mentioned in the complaint, a resident of Mecklenburg County, and was at and before the date of the execution of the notes sued on engaged in business in said county under the trade name of `Baltimore Mercantile Company.' (2) That the defendant has not and never had, complied with the law in regard to causing his said trade name to be recorded in the office of the clerk of the Superior Court of said county. (3) That it is alleged in the complaint and admitted in the answer that the defendant had so failed to record his trade name `as required by law.' *Page 551 
(4) That as a result of the failure of the defendant to file his trade name the plaintiff in this action brought suit on said notes against a corporation by the name of the Baltimore Mercantile Company, and was compelled in said action to take a nonsuit and suffered costs and expense, whereas if the defendant had complied with the law recording his trade name this suit and mistake would not have occurred. That upon these facts and admissions the court is of the opinion that the defendant having violated the law by failing to file said trade name to be recorded, and having violated the penal laws of the State by this omission, is not entitled to defend the present action.
"And it further appearing that the summons in this action has been personally served upon the defendant; that a duly verified complaint setting forth the breach of an express contract to pay a definite sum of money upon notes has been filed according to law, and the court being of the opinion that the answer should be struck out and that the plaintiff is entitled to judgment.
"It is therefore upon motion of Thos. W. Alexander, attorney for the plaintiff, that it is hereby ordered, adjudged and decreed that the plaintiff have and recover judgment against the defendant in the sum of —
"$87.00 with interest thereon from 9 March, 1924, until paid at six per cent.
"$87.00 with interest thereon from 9 April, 1924, until paid at six per cent.
"$87.00 with interest thereon from 9 May, 1924, until paid at six per cent.
"$87.00 with interest thereon from 9 June, 1924, until paid at six per cent.
"$87.00 with interest thereon from 9 July, 1924, until paid at six per cent.
"$84.26 with interest thereon from 9 August, 1924, until paid at six per cent.
"And it further appearing that this action is to recover obligations upon which defendant agreed to pay a reasonable attorney's fee for collection, and being an action by a bank for collection of notes purchased by it, and the court being of the opinion that the sum of $50 is a reasonable charge: It is ordered and adjudged that the plaintiff recover of the defendant the additional sum of $50 with interest thereon from 12 January, 1925, being the first day of this term of court, at six per cent per annum until paid; that the defendant pay the costs of the action; that the action being upon notes that the same be marked `judgment' by the clerk." *Page 552 
The defendant appealed, assigning error in granting plaintiff's motion to strike out the answer and in rendering judgment by default final, and in allowing attorneys' fees.
C. S., 3288, prohibits persons from carrying on business in this State "under assumed name, or under any designation, name or style other than the real name of the individual owning, conducting or transacting such business," unless a certificate is filed by such person in the office of the clerk of the Superior Court in the county where such business is carried on, setting forth the name under which such business is conducted or transacted, and the true or real full name of the persons conducting or transacting the same, with the home and postoffice address of such person; and punishment for the violation of this section is prescribed in C. S., 3291. As originally enacted, Public Laws 1913, ch. 77, sec. 4, made the person owning, carrying on or conducting or transacting business without complying with what is now C. S., 3288, guilty of a misdemeanor, and prescribed punishment. Public Laws 1919, ch. 2, added a proviso, however, to C. S., 3291: that the failure to comply with C. S., 3288, "shall not prevent a recovery by said person or persons in any civil action brought in any of the courts of this State." This proviso was added in the light of the decision of this Court in Courtney v. Parker, 173 N.C. 479. Prior to this amendment this statute was commented upon in Fineman v. Faulkner,174 N.C. p. 16. In Courtney v. Parker, supra, it was the plaintiff that had violated the foregoing statute by engaging in the prohibited transaction out of which the suit arose. In Fineman v. Faulkner, supra, the plaintiff had not violated any statute, but was suing the administrator of Mamie Faulkner, who was engaged in an illegal business, and the Court says: "In all the cases in which recovery has been denied, it will be found that either the consideration or the transaction was illegal, or the vendor participated in the illegal purposes of the purchaser."
This statute was further considered by the Court in Jennette v.Coppersmith, 176 N.C. 82. In that case Courtney v. Parker, supra, was distinguished, and the plaintiffs allowed to recover without filing the certificate required by C. S., 3288, because the title of the plaintiffs' firm, Jennett Bros., afforded a reasonable and sufficient guide to correct knowledge of the individuals composing the firm, and, therefore, did not come clearly within the doctrine of "assumed" names; and in *Page 553 Hines v. Norcott, 176 N.C. p. 130, the Court held that this statute did not apply, because the action did not arise out of the doing of an act forbidden by the statute.
The foregoing were decided by this Court prior to the enactment of chapter 2, Public Laws 1919. This enactment added the proviso now appearing in C. S., 3291, and this proviso had the effect to change the decision inCourtney v. Parker, supra, as to violations of C. S., 3288. The legislative intent is clear, not only in the act itself, but the title, "An act to amend chapter 77, of the Public Laws of 1913, regulating the use of assumed names in partnerships, so as to permit recovery in actions brought by a partnership which has failed to register."
In Price v. Edwards, 178 N.C. 494, this statute again came under the consideration of the Court under the following circumstances: The administrator of S. J. Edwards, together with J. H. Edwards, in his individual capacity, instituted a proceeding for the final settlement of the estate of S. J. Edwards, deceased. S. J. Edwards, at the time of his death, was conducting a mercantile business in Stanly County in the name of "S. J. Edwards." J. H. Edwards claimed to be a partner in this business and to own a one-third interest in the same. Other distributees of the deceased denied this partnership and pleaded chapter 77, Public Laws 1913 (C. S. 3288-3289-3291), in bar of J. H. Edwards' right to recover as such partner, and in answer to appropriate issues the jury found that J. H. Edwards was a partner to the extent of one-third interest in the business conducted by S. J. Edwards, and that no certificate had been filed with the clerk of the Superior Court, as required by law. The Court said the statute did not apply, since "no question arises as to the rights of third persons." "No good reason can be assigned, or, at least, none has been suggested, why such a statute should defeat the recovery of his share by the living partner, where no third person is involved, but only the partners themselves in relation to transactions wholly inter se. The intent and object of the statute was to require notice to be given to the business world of the facts required to be set out in the certificate, to the end that people dealing with a firm may be fully informed as to its membership and know with whom they are trading, and what is the character of the firm and the reliability and responsibility of those composing it."
As stated in Courtney v. Parker, supra, and reaffirmed in Price v.Edwards, supra, this statute is "a police regulation to protect the general public, as heretofore stated, from fraud and imposition."
The courts will not lend their aid to extend a highly penal statute, although it is within the police power, unless the case comes within the letter of the law, and, also, within its meaning and palpable design. It is just as clearly the policy of the law that it will not lend its aid in *Page 554 
enforcing a claim founded on its own violation. Price v. Edwards, supra;Marshall v. Dicks, 175 N.C. 41; McNeill v. R. R., 135 N.C. 733; VinegarCo. v. Hawn, 149 N.C. 357.
In Jennette v. Coppersmith, supra, the Court, reviewing Courtney v.Parker, supra, after referring to the highly penal character of this statute, says: "It should not be extended or held to include cases that do not come clearly within its provision."
The legislative intent must be the controlling spirit in the construction and application of statutes of this nature. Niemeyer v.Wright, 75 Va. 239; Harris v. Runnels, 12 How. (U.S.), 79. In the latter case, the Court, in speaking of a statute containing a prohibition and a penalty, says that when prohibition and penalty included in the statute "makes the act which it punishes unlawful, and that this may be implied from a penalty without a prohibition. But it does not follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. It is not necessary, however, that the reverse of that should be expressed in terms to exempt a contract from the rule."
In the instant case it is clear by express enactment that the Legislature intended by adding the proviso that the punishment should be confined to the fine or imprisonment set out in C. S. 3291, but that contracts made by persons carrying on or conducting or transacting the business in violation of this statute should not be void.
In Real Estate Co. v. Sasser, 179 N.C. 498, the Court considers this statute, Public Laws 1913, ch. 77, together with chapter 2, Public Laws 1919, now contained in C. S., 3288-3291, inclusive, and allows the plaintiff to recover, although he was carrying on a real estate business, and he admitted direct violation of this statute. The Court says that this amendment (chapter 2, Public Laws 1919) applied to pending actions and to transactions prior to its enactment in the absence of a saving clause. 36 Cyc., 1164. And, since it is a mere police regulation, it may be abolished at any time and no vested rights are required under it.
In Miller v. Howell, 184 N.C. 119, the Court denied the right to the plaintiff to recover on notes given in violation of C. S., 4742-47434744-4749. The Court discusses the rule very fully, with many authorities, and applies Courtney v. Parker, supra; Ober v. Katzenstein,160 N.C. 439; Lloyd v. R. R., 151 N.C. 536; Edwards v. Goldsboro,141 N.C. 60; Puckett v. Alexander, 102 N.C. 95; Warden v. Plummer,49 N.C. 524; Sharp v. Farmer, 20 N.C. 255, as follows: "It is well established that no recovery can be had on a contract forbidden by the positive law of the State, and the principle prevails, as a general rule, whether it is forbidden in express terms or by implication arising from *Page 555 
the fact, that the transaction in question has been made an indictable offense or subjected to the imposition of a penalty."
In Miller v. Howell, supra, as well as the cited case from which this rule is deduced, the actor was asserting a right to recover out of a transaction expressly prohibited and penalized by the statute, which contained no provision limiting its effect to the punishment or penalty prescribed.
In Phosphate Co. v. Johnson, 188 N.C. 419, Mr. Justice Connor clearly reviews the authorities on this question and reaffirms Courtney v. Parker,supra, but notes that chapter 2, Public Laws 1919, takes out of chapter 77, Public Laws 1913, the bar to a recovery in a civil action on a contract growing out of transaction prohibited thereby.
The plaintiff in the instant case asserts that this amendment, chapter 2, Public Laws 1919, does not, now, affect plaintiffs or actors, but that it applies, in all its rigor, to defendants, or persons against whom liability is asserted.
Plaintiff further asserts that, whenever it appears that the defendant has violated this statute, the trial court has the power to strike out its answer and to render judgment by default against him because of his admitted no compliance therewith.
The defendant in the instant case filed an answer raising issues properly triable by jury, if the court below was in error in striking out his answer. The power of the court below to strike out the answer is vigorously challenged in defendant's exceptions.
The exercise of the power to strike out pleadings in cases where no statute authorizes the striking out has not frequently arisen in the courts of this State. That the power of the courts to strike out pleadings does exist in certain cases admits now of no doubt. Crump v. Thomas, 89 N.C. 241. In that case the amended answer was stricken out because it was in direct violation of the leave given to file an amended answer. The Court was protecting its own order.
In Lumber Co. v. Cottingham, 168 N.C. 544, the Court holds that the Superior Courts, as did the former Equity Courts, have, now, full power to refuse to allow a party in contempt to oppose relief sought by the plaintiff by contradicting the allegations of the bill or bring forward any defense. It appears that Chancellor Kent recognized this rule which formerly obtained in the English Chancery. Manning v. Manning, 1 Johns Ch., 527; Walker v. Walker, 82 N.Y. 260; Brinkley v. Brinkley, 47 N.Y. 41;Saylor v. Mockbie, 9 Iowa 209; O'Connor v. Ry. Co., 75 Ia., 617; Kaskellv. Sullivan, 31 Mo., 435.
In 31 Cyc., 632, we find that "pleadings are frequently stricken out for disobedience to orders of court." This power is exercised in practically all the States. See note 3 Cyc., 632. *Page 556 
This power, so clearly established in this State, yet so infrequently exercised, is an attribute of the equity jurisdiction, based on the contemptuous conduct of a party toward the Court and its administration, and does not include the instant case. If defendant's admission invoked the rule in Courtney v. Parker, supra, it was necessary for the answer to remain a part of the record in order to support the judgment. The answer was filed within the statutory time allowed, and he was not in contempt; he has a right to be heard and to interpose all defenses, legal or equitable, unless he has forfeited this right by some act in this action, which is tantamount to his refusal to accept or use the right of "due process."
In O'Neil v. Thomas Day Co., 152 Cal. 357, the Court distinguishes, even in punishing for contempt in civil cases, thus: "The plaintiff is always a voluntary actor before a court. A defendant is always under compulsion."
In American Wireless v. Superior Court, 153 Cal. 533, the answer was stricken from the files on the ground that defendant, a foreign corporation, had "failed and neglected" to comply with a California statute requiring foreign corporations doing business in that State to file a certified copy of its articles of incorporation with the Secretary of State, and this statute further provided that foreign corporations failing to comply with this requirement could not maintain any suit or action in any of the courts of the State. An order striking out the answer under this statute was reversed, the Court saying that such a statute "will not be construed to extend beyond the plain meaning of its terms considered in connection with its object and purpose."
The object of C. S., 3288, is to protect creditors and third persons dealing with parties trading under "assumed names" from fraud and imposition; to enable them to know the real names of those with whom they deal. This object cannot be accomplished by taking away the right to defend an action. This would allow any person not only to sue, but to recover, adlibitum, when the legislative intent is now limited to the punishment prescribed in C. S., 3291.
The same rule is announced in Weeks v. Gold Mining Co., 73 Cal. 599;Benefit Order v. Jones, 20 Tex. Civil Apps. Rep., p. 73.
The defendant is entitled to the benefits of "due process of law." "The essential elements of due process of law are notice and opportunity to defend." Phillips v. Telegraph Co., 130 N.C. p. 522; Simon v. Craft,182 U.S. 427, 436. A contumacious defendant loses the right to claim the protection of "due process" when he contemptuously refuses this right and willfully refuses to obey rules of the forum.
In Grocery Co. v. Bails, 177 N.C. 298, it was held that a violation of a similar statute, C. S., 3292, did not affect a married woman's right to her personal property exemptions. *Page 557 
 Weld v. Shop Co., 147 N.C. 589, does not allow Rev. 2118, now C. S., 3292, to apply, even though violated, if creditor knew the truth when he sold the goods.
Therefore, we must conclude that the legislative intent, as well as its meaning and spirit, will not permit the striking out of the defendant's answer, or a judgment against him, because of his admitted violation of C. S., 3288.
In Trust Co. v. Murphy, ante, 479, Mr. Justice Connor, in discussing the effect of C. S., 3288, says: "This statute manifestly is for the protection of creditors of persons who fail to comply with its provisions, or of others who do business with them. The consequences of a violation of the statute are prescribed by C. S., 3291. They seem to be limited to punishment as a misdemeanor, for it is expressly provided that failure to comply with C. S., 3288 shall not prevent a recovery in a civil action by the person who shall violate the statute." It would be anomalous to allow the violator to recover on the ground that the transaction is valid, when he is plaintiff, but allow others, when he is a defendant, to recover of him on the ground that it is void.
Since the question of the validity of the stipulation in the notes sued on as to payment of "attorney fees" may arise at the next trial, we will now consider it:
We recognize that, in several States, these stipulations are upheld.Bank v. Yarborough, 120 S.C. 385, both in law and equity cases; Williamsv. Flowers, 90 Ala. 136; Jones v. Crawford, 107 Ga. 318; Bowie v. Hall,69 Md. 433; 1 L.R.A., 546 (note); Bank v. Fuqua, 11 Mont. 285; Peyserv. Cole, 11 Or. 39; Bank v. Badham, 86 S.C. 170; Morrill v. Hoyt,83 Tex. 59; 8 C. J., 148; 3 R. C. L., 895.
Such stipulations are held, in many States, to impair the negotiability of the notes containing them. Others hold otherwise. See note collecting the authorities on both views in 125 Am. St. Rep., 207-212. North Carolina settled this by statute, C. S., 2983, both as to the effect on negotiability and as to validity of the stipulation itself.
This statute (C. S., 2983) provides that "a provision incorporated in the instrument to pay counsel fees for collection is not enforceable." Although the note is executed and payable in another State, such a provision must stand the test of validity here. Lex fori governs. Bank v.Land Co., 128 N.C. 193. Such stipulations were discussed in Tinsley v.Hoskins, 111 N.C. 340; Bullock v. Taylor, 39 Mich. 137. Tinsley v.Hoskins, supra, has been affirmed in Briscoe v. Norris, 112 N.C. 677;Williams v. Rich, 117 N.C. 240; Turner v. Boger, 126 N.C. 302; Bank v.Land Co., 128 N.C. 195; Ragan v. Ragan, 186 N.C. 461. In Ragan v.Ragan, supra, Mr. Justice Clarkson *Page 558 
ably discusses this doctrine and arrays the authorities in this State, and clearly sets forth the views in North Carolina in its various phases. InTinsley v. Hoskins, supra, our Court declared that: "Such a provision is a stipulation for a penalty or forfeiture, tends to the oppression of the debtor and to encourage litigation, is a cover for usury, is without any valid consideration to support it, contrary to public policy and void."Bank v. Sevier, 14 Fed., 662; Meyer v. Hart, 40 Mich. 517; Toole v.Stephen, 4 Leigh, 581; Boozer v. Anderson, 42 Ark. 167; Shelton v. Gill,11 Ohio, 417; Martin v. Trustees, 13 Ohio, 250; Dow v. Updike, 11 Neb. 95.
Unless authorized by statute, the long-standing rule that they are invalid must prevail. Both the statute, C. S., 2983, and the decisions of our Court establish and assert their invalidity.
In order that a trial may be had on the issues raised by the pleadings, let the judgment appealed from be
Reversed.