## PAUL J. McARVER v. JAMES GERUKOS.

(Filed 13 October, 1965.)

**1. Trial § 21—**

On motion to nonsuit, plaintiff's evidence must be taken as true and considered in the light most favorable to him.

**2. Same—**

On motion to nonsuit, only those portions of defendant's evidence which are favorable to plaintiff may be considered.

**3. Brokers and Factors § 1; Statutes § 10—**

The statute making it unlawful to engage in the business of a real estate broker or salesman without a license must be strictly construed with a view to the evil it was intended to supress. G.S. 93A-1.

**4. Same; Contracts § 6—**

A person who is not a licensed real estate broker or salesman may not recover compensation, either under contract or upon *quantum meruit*, for activities in regard to the purchase, sale or leasing of land when such activities are restricted by the statute to licensed brokers or salesmen.

**5. Same— Person purchasing land for his own account is not required to be licensed even though purchase is for resale.**

Allegation and evidence to the effect that plaintiff assisted defendant broker in obtaining options on property in defendant's name, that the options were resold to a developer who erected a building thereon and that defendant negotiated a lease to a store company, and that plaintiff did so under a contract providing for the payment to plaintiff by defendant of a portion of the commissions, profits, and payments received by defendant in connection with the sale of the options and the negotiation of the lease, *held* not to disclose an illegal contract as a matter of law, there being nothing to suggest that either party contemplated that plaintiff would take any part in the negotiation of the lease or would participate in any of the contemplated activities other than the acquisition of the options for the account of the parties themselves. G.S. 93A-2(c).

APPEAL from *Riddle, S.J.,* 10 May 1965, Civil Session of GASTON.

Action for breach of contract. From a judgment of nonsuit the plaintiff appeals.

The complaint alleges that the plaintiff, the defendant and one Daniel agreed that they would obtain options upon certain tracts of land in the City of Gastonia, would resell the same and would share equally all profits, commissions or other benefits received from the transactions; that the plaintiff assisted the defendant in obtaining options on such properties which options the defendant resold; and that the profits received by the defendant from the resale of the options, together with payments to him for services in connection with the negotiation of a lease of the properties amounted to $12,025, one-third of

which sum is due the plaintiff, but the defendant has refused to pay such share to him.

The answer denies all material allegations of the complaint and, by way of further defense, alleges that, if the parties did contract as alleged in the complaint, the contract was illegal and void for the reason that the plaintiff was not a licensed real estate broker or salesman in accordance with the provisions of G.S. 93A-1.

The plaintiff testified, in substance, as follows: Prior to the transactions involved in this action he had had other dealings with the defendant. In the late summer of 1963 the defendant informed him that Colonial Stores wanted a location in Gastonia and the defendant wanted the plaintiff to help him find and acquire one. Their plan was to select a site, obtain options to buy the tracts comprising it, then find a buyer to whom they would transfer the options and who would build thereon a store to be leased by him to Colonial Stores. The profits, including compensation for various aspects of the contemplated transactions, were to be divided in three equal shares by the plaintiff, the defendant and Daniel who was brought into the arrangement by the defendant. The plaintiff made numerous trips and had many conferences with the defendant and with the property owners and the contemplated options were obtained in the name of the defendant. At the time of these agreements and transactions the plaintiff was not licensed by the North Carolina Real Estate Licensing Board, which the defendant knew.

Daniel testified for the plaintiff, in substance, as follows: He is a licensed real estate broker. He and the defendant agreed early in 1963 to work together to obtain a location for a store to be operated by Colonial Stores. They were "to work the investors, obtain suitable locations, make various surveys, house counts, and population counts in dealings with Colonial Stores." They found what they believed a suitable location and Daniel convinced Colonial Stores of its desirability, and it eventually occupied and now occupies a store building constructed thereon. Daniel's part of the transaction also included assisting in finding an investor who would buy the site and erect the store building thereon for leasing to Colonial Stores. Thereafter, the defendant introduced the plaintiff to Daniel as his partner who was assisting him and had been helping him obtain options on the properties comprising the desired location. At the suggestion of the defendant, the agreement between Daniel and the defendant was then amended to provide for a division of the profits equally among the three men, Daniel, the defendant and the plaintiff. These "profits" were to consist of the difference between the purchase price and the sale price of the

options plus any commission received as a result of the making of a lease between the investor-purchaser of the land and Colonial Stores. Such lease was negotiated and executed. The defendant has never paid Daniel his part of the profits from the transaction.

Frank Matthews, called as a witness for the plaintiff, testified, in substance: He is the vice-president of Robinson Investment Company, the investor which bought the options from the defendant, exercised them to acquire the site, built the store building and leased it to Colonial Stores. It paid the defendant $12,075 "for putting together" this entire transaction, including the transfer by the defendant to it of the options and the bringing about of the lease to Colonial Stores.

At the close of the plaintiff's evidence the defendant moved for judgment as of nonsuit which motion the court denied. Thereupon, the defendant testified, in substance, as follows: He received $12,075 from the Robinson Investment Company for the options in question and for putting the entire deal together. All of the options were in the defendant's own name. He had no agreement with the plaintiff or with Daniel for the sharing of the money so received by him. He has done business with the plaintiff before, and just prior to the matters involved in this action they had made a profit of $9,600 on another real estate transaction. He did not know that the plaintiff had no real estate license at that time.

At the close of all the evidence the defendant renewed his motion for judgment as of nonsuit and the motion was granted. The plaintiff appealed.

*W. N. Puett and Berlin H. Carpenter, Jr., for plaintiff.*
*Hollowell & Stott for defendant.*

LAKE, J. In passing upon a motion for judgment of nonsuit, the plaintiff's evidence must be taken to be true and must be considered in the light most favorable to him. Only those portions of the defendant's evidence which are favorable to the plaintiff may be considered upon such a motion.

So considered, the evidence is amply sufficient to show that the plaintiff and the defendant contracted as alleged in the complaint, that the defendant broke the contract and the plaintiff has been damaged thereby in the amount of $4,025 (only $4,008.33 being alleged in the complaint). The sole question, therefore, is whether the contract so alleged and shown is unenforceable by the plaintiff for the reason that when it was made and performed he did not have a license as a real estate broker or salesman pursuant to Chapter 93A of the General Statutes, the pertinent provisions of which are:

G.S. 93A-1. *"License required of real estate brokers and real estate salesmen.* — From and after July 1, 1957, it shall be unlawful for any person * * * to act as a real estate broker or real estate salesman, or directly or indirectly to engage or assume to engage in the business of real estate broker or real estate salesman without first obtaining a license issued by the North Carolina Real Estate Licensing Board * * * under the provisions of this chapter."

G.S. 93A-2. *"Definitions and exceptions.*— (a) A real estate broker within the meaning of this chapter is any person, partnership, association, or corporation, who for a compensation or valuable consideration or promise thereof sells or offers to sell, buys or offers to buy, auctions or offers to auction * * * or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or who sells or offers to sell leases of whatever character, or rents, or offers to rent any real estate or the improvement thereon, for others, as a whole or partial vocation.

"(b) The term real estate salesman within the meaning of this chapter shall mean and include any person who, for a compensation or valuable consideration is associated with or engaged by or on behalf of a licensed real estate broker to do, perform or deal in any act, acts or transactions * * * comprehended by the foregoing definition of real estate broker.

"(c) The provisions of this chapter shall not apply to and shall not include any person, partnership, association or corporation, who, as owner or lessor, shall perform any of the acts aforesaid with reference to property owned or leased by them, where such acts are performed in the regular course of or as an incident to the management of such property and the investment therein; * * * and nothing in this chapter shall be so construed as to require a license for the owner, personally, to sell or lease his own property."

G.S. 93A-8. *"Penalty for violation of chapter.* — Any person violating the provisions of this chapter shall upon conviction thereof be deemed guilty of a misdemeanor and shall be punished by a fine or imprisonment, or by both fine and imprisonment, in the discretion of the court."

The act was declared constitutional in *State v. Warren,* 252 N.C. 690, 114 S.E. 2d 660. Its purpose is to protect sellers, purchasers, lessors and lessees of real property from fraudulent or incompetent brokers and salesmen. It must be construed with a regard to the evil which it

is intended to suppress. *State v. Brown*, 221 N.C. 301, 20 S.E. 2d 286.
Any violation of its provisions is declared to be a criminal offense. For
this reason, and for the further reason that it is a statute restricting to
a special class of persons the right to engage in a lawful occupation,
the act must be strictly construed so as not to extend it to activities
and transactions not intended by the Legislature to be included. *Milk
Producers Co-op v. Dairy*, 255 N.C. 1, 20, 120 S.E. 2d 548; *State v.
Mitchell*, 217 N.C. 244, 7 S.E. 2d 567; *State v. Harris*, 213 N.C. 758,
197 S.E. 594.

If the statute, so construed, makes the doing of an act a criminal
offense, one who has contracted to do the forbidden act may not, after
performing his contract, sue in the courts to recover the agreed con-
sideration for such performance. *Cauble v. Trexler*, 227 N.C. 307, 42
S.E. 2d 77; *Courtney v. Parker*, 173 N.C. 479, 92 S.E. 324; *Cansler v.
Penland*, 125 N.C. 578, 34 S.E. 683; Restatement of Contract, § 580;
Anno., Validity of Contract in Violation of Statute, 55 A.L.R. 2d 481,
483.

In *Courtney v. Parker, supra,* the plaintiff sold building materials to
the defendant in the course of a business conducted by the plaintiff un-
der an artificial name without registering the name of the owner, as the
statute required, a violation of the statute being a misdemeanor. For
this reason it was held that he could not maintain an action for the
contract price, nor could he recover on *quantum meruit*. The Court
said:

> "It is well established that no recovery can be had on a con-
> tract forbidden by the positive law of the State, and the principle
> prevails as a general rule whether it is forbidden in express terms
> or by implication arising from the fact that the transaction in
> question has been made an indictable offense or subjected to the
> imposition of a penalty."

In *Cauble v. Trexler, supra,* the Court said:

> "Where the law-making power speaks on a particular subject
> over which it has power to legislate, public policy in such cases is
> what the law enacts. Hence an agreement which violates a pro-
> vision of a statute or which cannot be performed without a vio-
> lation of such provision is illegal and void."

In Restatement of the Law of Contracts, § 580, the rule is stated as
follows:

> "(1)   Any bargain is illegal if either the formation or the per-
> formance thereof is prohibited by constitution or statute.   (2)

Legislative intent to prohibit the formation of a bargain, or an act essential for its performance, may be manifested by * * * (d) requiring a license, inspection, or something similar from persons making such bargains or doing acts essential for their performance * * *."

In Williston on Contracts (Rev. Ed.), § 1765, it is stated:

"Where a statute requires a broker to obtain a license before sales of the kind in question can be negotiated by him, there is no doubt that if such a sale is made by one acting as a broker without the required license, he can recover no compensation for his services * * *."

Recovery of commissions has been denied an unlicensed real estate broker by the Supreme Courts of Illinois and Michigan, the statutes involved being similar to our own. *Frankel v. Allied Mills, Inc.,* 369 Ill. 578, 17 N.E. 2d 570; *Krause v. Boraks,* 341 Mich. 149, 67 N.W. 2d 202. In the *Krause* case the defendant was a licensed real estate broker who had contracted to pay the unlicensed plaintiff a commission for finding a purchaser for property listed with the broker for sale by the third-party owner. This circumstance distinguishes the *Krause* case from the one at hand.

Thus, if McArver and Gerukos contracted for the doing of an act or the handling of a transaction by McArver, which he was forbidden to do by G.S. 93A-1, McArver cannot maintain this action for the recovery of his agreed share of the proceeds of their activities.

G.S. 93A-2(c) expressly provides that nothing in this act shall be construed so as to require the owner of property to obtain a license before selling or leasing it himself. This Court has held that the act does not apply to a sale by such owner of his own note secured by a deed of trust upon his property. *In Re Dillingham,* 257 N.C. 684, 127 S.E. 2d 584. Although the statute does not expressly exempt from its provisions one who purchases or leases land for his own account, it defines "real estate broker" as a person who does these specified acts "for others." Thus, it is clear that the Legislature did not intend for this act to apply to a person, partnership or association who purchases land for his or its own account, even though such purchase is for resale. Therefore, a contract by one who is not a licensed real estate broker or salesman with another person to buy land, or an option thereon, for their own account and, thereafter, to resell such land, or option, and divide the profits would not be a contract to do an act prohibited by this statute.

It is true that the plaintiff's own evidence shows that the entire plan contemplated by the plaintiff and the defendant included more

than the mere acquisition and resale of options on land. Their venture also contemplated that a lease would be negotiated on behalf of the purchaser of such options from them, as lessor with Colonial Stores as lessee. The negotiation and bringing about of such a lease would be the act of a "real estate broker" within the contemplation of this statute. If their contract was for the doing of such an act by the plaintiff, who was not a licensed broker or salesman, the contract would be illegal and the plaintiff could not enforce it. However, there is nothing to suggest that either party to the contract contemplated that the plaintiff would take any part in the negotiations of such lease or would participate in any of their contemplated activities other than the acquisition of the options. There is nothing in the plaintiff's evidence to suggest that he did take part in the negotiation of any lease or in any act other than the acquisition of the options and the defendant denies that the plaintiff did so.

Thus, there is no evidence whatever that the plaintiff contracted to do or did any act for which a real estate broker's or salesman's license is required by the statute. This statute does not forbid a licensed real estate broker, such as the defendant, to embark with an unlicensed person upon a joint venture in which all of the unlicensed party's activities will be such as are not within the contemplation of this statute, nor does this statute forbid them to agree that they will share all of the receipts from the activities of both of them. Such a contract, when enforced as made, does not violate the policy declared by the Legislature in this statute.

All of the contemplated activities under this contract which the statute forbids to be done by an unlicensed person were to be performed and were performed by the defendant, who is a licensed real estate broker. The statute is not concerned with a licensed broker's sharing of his commissions with an unlicensed associate, unless the reason for such sharing is the performance by the unlicensed associate of acts which violate the statute. See G.S. 93A-6(9). Thus the contract between the plaintiff and the defendant, if it was made, as the plaintiff's evidence tends to show, was not in violation of this statute and public policy does not forbid its enforcement by the courts. Therefore, the granting of the motion for judgment of nonsuit was error.

Reversed.